

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00051-CV

**IN THE INTEREST OF B.A.S.** and B.J.S., Children

From the 218th Judicial District Court, Karnes County, Texas
Trial Court No. 19-09-00242-CVK
Honorable Russell Wilson, Judge Presiding

Opinion by:　Patricia O. Alvarez, Justice

Sitting:　　　Patricia O. Alvarez, Justice
　　　　　　Luz Elena D. Chapa, Justice
　　　　　　Lori I. Valenzuela, Justice

Delivered and Filed: May 3, 2022

AFFIRMED

In this case, the trial court terminated the parents' rights to their children B.A.S. and B.J.S.[1] With respect to B.A.S., Dad challenges the legal and factual sufficiency of the evidence for the trial court's findings on statutory grounds (D), (E), and (O), and the best interest of the child, but he does not challenge the finding that he failed to establish paternity for B.J.S.

Because the evidence was legally and factually sufficient to support the trial court's challenged findings, and we must take its unchallenged finding as true, we affirm the trial court's order.

---

[1] We use aliases to protect the children's identities. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8.

**BACKGROUND**

In this case, Dad is the only appellant, and we limit our recitation of the facts to those relating to Dad and the children.

Dad considered himself "common-law married" to Mom. While Mom and Dad were living together, Mom gave birth to B.A.S., B.J.S., and K.S.

In April 2019, when B.A.S. was about fifteen months old, and before B.J.S. or K.S. were born, the Department received a referral based on concerns that Mom and Dad were using and selling methamphetamines.

The next day, law enforcement officers raided Mom and Dad's home. In their bedroom, which also had a child's bed, diapers, and baby wipes in it, the officers found drug paraphernalia, a grinder with marijuana residue, and a mirror and a tray with "crystal cuts" of methamphetamine on it. The crystal substance was collected and weighed at approximately five grams. The child's bed was only two to three feet away from the grinder and mirror. There was also a dresser with drawers that contained an assortment of papers, clothing items, and some paperwork with Dad's name on it. In almost every drawer, there was a clear, crystal substance that one officer identified by his training and experience as methamphetamine.

The Department offered Mom and Dad family-based safety services, and it created a safety plan. Mom and Dad agreed to work services and comply with the plan.

In July 2019, when B.J.S. was born, Mom tested positive for methamphetamine, and so did newborn B.J.S. Because Mom and Dad were willing to work services and comply with the safety plan, the children were not removed at that time.

In September 2019, the Department sought to remove the children because of Mom's and Dad's continuing drug use, and Mom and Dad were having "a lot of arguments . . . in front of the

children and [the Department had] concerns about domestic violence," but the children were not removed at that time.

In November 2019, after a show cause hearing, B.A.S. and B.J.S. were removed. The trial court ordered hair follicle tests for B.A.S. and B.J.S.—which were positive for amphetamine and methamphetamine. The Department created a Family Plan, which Dad signed in December 2019.

In August 2020, Mom gave birth to K.S.,[2] and again, mother and child tested positive for methamphetamines.

After multiple permanency hearings over several months and eventually a four-day bench trial on the merits, the associate judge's written order found by clear and convincing evidence that Dad's course of conduct met the grounds in Family Code subsections 161.001(b)(1)(D), (E), and (O), and that terminating Dad's parental rights was in B.A.S.'s best interest. The written order also found that Dad failed to establish paternity for B.J.S.

After Dad requested a de novo hearing, the district court signed an order with the same findings as those made by the associate judge. The district court's order terminated Dad's parental rights to B.A.S. and B.J.S.

Dad filed a notice of appeal. Dad challenges the legal and factual sufficiency of the evidence supporting the district court's findings on grounds (D), (E), and (O), and B.A.S.'s best interest, but he does not challenge the trial court's finding that he failed to establish paternity for B.J.S.

Before we address Dad's issues, we briefly recite the applicable evidentiary and appellate review standards.

---

[2] K.S. is not a child subject of this suit, but she is a child subject of a companion suit filed by the Department.

**EVIDENCE REQUIRED, STANDARDS OF REVIEW**

"[I]n a bench trial, the judge as the trier of fact weighs the evidence, assesses the credibility of witnesses and resolves conflicts and inconsistencies." *In re S.J.R.-Z.*, 537 S.W.3d 677, 691 (Tex. App.—San Antonio 2017, pet. denied); *accord In re F.M.*, 536 S.W.3d 843, 844 (Tex. App.—San Antonio 2017, no pet.).

On review, an appellate court must not "substitute its own judgment for that of a reasonable factfinder." *In re Commitment of Stoddard*, 619 S.W.3d 665, 668 (Tex. 2020); *accord In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).

The evidentiary standard[i] the Department must meet and the statutory grounds[ii] the trial court must find to terminate a parent's rights to a child are well known, as are the legal and factual[iii] sufficiency standards of review. We apply those standards here.

**STATUTORY GROUNDS FOR TERMINATING DAD'S PARENTAL RIGHTS**

**A.    Statutory Grounds Findings**

A single statutory ground finding, when accompanied by a best interest of the child finding, is sufficient to support terminating a parent's rights under section 161.001. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re R.S.-T.*, 522 S.W.3d 92, 111 (Tex. App.—San Antonio 2017, no pet.).

Dad challenges the trial court's findings on all three grounds, (D), (E), and (O), and we must provide the details of our analysis supporting grounds (D) and (E). *See In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019) ("We hold that due process and due course of law requirements mandate that an appellate court detail its analysis for an appeal of termination of parental rights under section 161.001(b)(1)(D) or (E) of the Family Code.").

We turn to the law and the evidence supporting the trial court's challenged findings, beginning with grounds (D) and (E). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E).

**B.**     **Section 161.001(b)(1)(D)**

Under subsection (D), a parent's rights may be terminated if, before the child is removed, *see In re R.S.-T.*, 522 S.W.3d at 109 (relevant period), the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child," TEX. FAM. CODE ANN. § 161.001(b)(1)(D).  In the context of the statute, "'endanger' means to expose to loss or injury; to jeopardize." *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).

"A child is endangered when the environment creates a potential for danger that the parent is aware of but consciously disregards." *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *see In re R.S.-T.*, 522 S.W.3d at 108–09.

However, "[a] parent need not know for certain that the child is in an endangering environment; awareness of such a potential is sufficient." *In re R.S.-T.*, 522 S.W.3d at 109; *accord In re A.L.H.*, 468 S.W.3d 738, 746 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

"[U]nlawful conduct by a parent . . . who live[s] in the child's home can create an environment that endangers the physical and emotional well-being of a child as required for termination under subsection D." *In re S.R.*, 452 S.W.3d at 360 (citing *In re M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.)); *accord In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.).

"[A] single act or omission" may support terminating a parent's rights under subsection (D).  *In re R.S.-T.*, 522 S.W.3d at 109 (citing *In re R.D.*, 955 S.W.2d 364, 367 (Tex. App.—San Antonio 1997, pet. denied)).

**C.**     **Section 161.001(b)(1)(E)**

A parent's rights to their child may also be terminated if, inter alia, the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the

physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(E); *In re R.S.-T.*, 522 S.W.3d at 109; *In re T.N.S.*, 230 S.W.3d 434, 439 (Tex. App.—San Antonio 2007, no pet.).

For a parent to endanger a child, "it is not necessary that the [parent's] conduct be directed at the child or that the child actually suffers injury." *Boyd*, 727 S.W.2d at 533; *accord In re M.J.M.L.*, 31 S.W.3d 347, 350 (Tex. App.—San Antonio 2000, pet. denied) ("While subsection (E) endangerment must be a direct result of a parental course of conduct, the conduct described does not have to be specifically directed at the child . . . .").

A parent's use of illegal drugs "may qualify as an endangering course of conduct." *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *see In re T.N.S.*, 230 S.W.3d at 439. Moreover, "[a] parent's decision to engage in illegal drug use during the pendency of a termination suit, when the parent is at risk of losing a child, may support a finding that the parent engaged in conduct that endangered the child's physical or emotional well-being." *In re N.J.H.*, 575 S.W.3d 822, 832 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (quoting *In re K.C.F.*, No. 01-13-01078-CV, 2014 WL 2538624, at *10 (Tex. App.—Houston [1st Dist.] June 5, 2014, no pet.) (mem. op.)).

## D.      Legally, Factually Sufficient Evidence

In reviewing the evidence pertaining to ground (D), we consider evidence of conditions or surroundings endangering before the child is removed, and in reviewing evidence pertaining to ground (E), we consider evidence of the parent's course of conduct that endangers the child, whether before or after the child is removed. *In re R.S.-T.*, 522 S.W.3d at 109; *In re S.R.*, 452 S.W.3d at 360. Here, for brevity, and because much of the evidence for these separate grounds overlaps, we consolidate our recitation of the evidence. *See In re T.N.S.*, 230 S.W.3d at 439.

The trial court heard testimony regarding the conditions and surroundings that Dad placed or allowed the children to be in, as well as his course of conduct.

In April 2019, when B.A.S. was about fifteen months old and living with Mom and Dad, their home was raided by law enforcement officers. When officers entered Mom and Dad's bedroom, the officers found a child's bed, drug paraphernalia, a grinder with marijuana residue, and a tray and a mirror with methamphetamine on each. The child's bed was within two to three feet of the grinder and the mirror. There was also a dresser with drawers in which there was a clear, crystal substance which one officer identified by training and experience as methamphetamine.

In a post-raid interview with a Department investigator, Mom and Dad admitted using methamphetamine, and both tested positive for methamphetamine.

B.A.S. was not removed at that time, but in July 2019, when B.J.S. was born, Mom tested positive for methamphetamine, and so did newborn B.J.S.

Then in November 2019, in conjunction with the children's removal, the trial court ordered hair follicle tests for B.A.S. and B.J.S.—which were positive for amphetamine and methamphetamine.

We conclude the trial court could have reasonably formed a firm belief or conviction that, before her removal, Dad knowingly placed B.A.S. in surroundings which endangered her physical or emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D); *In re R.S.-T.*, 522 S.W.3d at 109; *In re T.N.S.*, 230 S.W.3d at 439; *In re J.T.G.*, 121 S.W.3d at 125.

We further conclude the trial court could have reasonably formed a firm belief or conviction that Dad engaged in conduct that endangered B.A.S.'s physical or emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E); *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002).

Therefore, the evidence was legally and factually sufficient to support the trial court's findings under subsections (D) and (E). *See In re C.H.*, 89 S.W.3d at 25; *In re R.S.-T.*, 522 S.W.3d at 109.

Because only a single statutory ground finding is needed to support an order terminating a parent's rights to a child, *In re A.V.*, 113 S.W.3d at 362, we need not address Dad's challenge to statutory ground (O), *see* TEX. R. APP. P. 47.1; *In re R.S.-T.*, 522 S.W.3d at 111.

We overrule Dad's challenges to grounds (D) and (E); his challenge to ground (O) is moot.

## BEST INTEREST OF THE CHILD

In his fourth issue, Dad argues the evidence was legally and factually insufficient to support the trial court's finding that terminating his parental rights was in the children's best interests. *See* TEX. FAM. CODE ANN. § 161.001(b)(2).

### A. Best Interest of the Child Factors

The Family Code statutory factors[iv] and the *Holley* factors[v] for best interest of the child are well known. Applying each standard of review and the applicable statutory and common law factors, we examine the evidence pertaining to the best interest of the child. We also consider the evidence we recited above pertaining to grounds (D) and (E) as we now review the best interest of the child under section 161.001(b)(2). *See In re C.H.*, 89 S.W.3d at 28 (noting that the same evidence used to prove the parent's acts or omissions under section 161.001(b)(1) may be used in determining the best interest of the child under section 161.001(b)(2)); *In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.).

The trial court heard the following testimony.

### B. Children's Ages and Vulnerabilities

At the time of trial, B.A.S. was about three years old, and B.J.S. was just under two years old; neither child was able to care for themselves. As very young children, each needs an attentive caregiver who exercises consistent concern for their safety and well-being. Further, B.A.S. requires many weekly medical appointments to meet her developmental milestones. *See* TEX.

F<span>AM</span>. C<span>ODE</span> A<span>NN</span>. § 263.307(b)(1), (8), (11), (12); *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976) (factors (B), (C)).

**C.    Dad's Ongoing Drug Abuse**

In April 2019, after his home was raided and officers found marijuana residue and methamphetamine in his room, Dad admitted using methamphetamine, and he tested positive for methamphetamine. Despite Mom's and Dad's arrests and the Department's initiation of a safety plan for the children, when B.J.S. was born in July 2019, Mom and newborn B.J.S. tested positive for methamphetamine.

In November 2019, after the children were removed and the court ordered Dad to submit to drug testing, Dad's December 2019 hair follicle test was positive for amphetamines. Moreover, Dad failed to report for drug testing on twenty separate dates from December 2019 through March 2021. And Dad admitted using "ice" in mid-2020.

From this evidence, despite Dad's denials, the trial court could have reasonably concluded that Dad was continuing to use illegal drugs, including methamphetamine. *See* T<span>EX</span>. F<span>AM</span>. C<span>ODE</span> A<span>NN</span>. § 263.307(b)(1), (8), (11), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (H)).

**D.    Indicia of Parent-Child Relationship**

While B.A.S. was living with Dad and in his care, Dad used illegal drugs. Dad and Mom continued living together while they were raising B.A.S. and Mom was pregnant with B.J.S. Because Mom and B.J.S. tested positive for methamphetamine at B.J.S.'s birth, and Mom and K.S. tested positive for methamphetamine at K.S.'s birth, the trial court could have found that Dad knew Mom was using drugs while she was pregnant with B.J.S. and K.S. Further, after B.J.S. was born, Dad continued to use drugs while he was responsible to care for both children. *See* T<span>EX</span>. F<span>AM</span>. C<span>ODE</span> A<span>NN</span>. § 263.307(b)(1), (8), (10), (11), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (H)).

**E.      Providing for Children's Needs**

Dad insisted he was able to provide for the children's needs based on his VA benefits checks alone, but his ongoing drug abuse did not provide a safe home environment for the children. *See* TEX. FAM. CODE ANN. § 263.307(b)(8), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (G), (H), (I)).

**F.      Children's Placement**

The foster parents "have the children on a structured schedule," in part because B.A.S. and K.S. require many recurring medical appointments, including physical and occupational therapy, to meet their developmental milestones. They take the children to all their appointments, they are meeting all the children's needs, and they want to adopt all three children: B.A.S., B.J.S., and K.S. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (F), (G)).

**G.      Ad Litem's Recommendation**

The children's ad litem recommended that it was in the children's best interests that Dad's parental rights to B.A.S. and B.J.S. be terminated. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (G), (H)).

**H.      Sufficient Evidence on Best Interest Finding**

The trial court could have believed the evidence showing that Dad used drugs while caring for B.A.S. and B.J.S., and he exposed them to methamphetamine to the degree that their hair follicles tested positive for methamphetamine. *See In re S.J.R.-Z.*, 537 S.W.3d 677, 691 (Tex. App.—San Antonio 2017, pet. denied); *In re F.M.*, 536 S.W.3d 843, 844 (Tex. App.—San Antonio 2017, no pet.).

It could have believed that Dad would continue his drug abuse—which could physically or emotionally harm the children. *See In re D.M.*, 452 S.W.3d at 472.

It could also have believed that the foster parents were meeting the children's present needs and would meet their future needs. *See In re S.J.R.-Z.*, 537 S.W.3d at 691; *In re F.M.*, 536 S.W.3d at 844.

Having reviewed the evidence under the appropriate standards, we conclude the trial court could have reasonably formed a firm belief or conviction that it was in B.A.S.'s best interest for Dad's parental rights to be terminated. *See In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (citing *In re C.H.*, 89 S.W.3d at 25). Therefore, the evidence was legally and factually sufficient to support the trial court's best-interest-of-the-child finding. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002).

We overrule Dad's fourth issue.

### UNCHALLENGED BASIS TO TERMINATE DAD'S PARENTAL RIGHTS TO B.J.S.

In its original petition, the Department identified Dad as the father of B.A.S., but as only the alleged father of B.J.S.

However, during the pendency of the case, Dad filed an amended counterpetition asserting he was the father of B.A.S. and B.J.S., and he sought conservatorship of both children. Moreover, at the commencement of trial, Dad personally appeared, and during trial, Dad asserted his paternity to B.A.S. and B.J.S. and argued that his paternal rights should not be terminated.

In the four-day trial, the Department argued that Dad's rights should be terminated based on the best interests of the children and Dad's course of conduct established statutory grounds (D), (E), and (O) as to B.A.S. and B.J.S. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (O). Dad vigorously defended his actions, he argued that the Department failed to meet its evidentiary burden with respect to either child, and he asked that the children be returned to his care.

**A.      Terminating Rights for Failure to Establish Paternity**

In its oral pronouncement, the trial court rejected Dad's arguments and terminated his parental rights to B.A.S. and B.J.S. on grounds (D), (E), and (O), and for the children's best interests.

But for B.J.S., the trial court's written order is inconsistent with its oral pronouncement, and the written order controls over its oral pronouncement. *See In re L.G.R.*, 498 S.W.3d 195, 206 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) ("When there is an inconsistency between a written judgment and an oral pronouncement of judgment, the written judgment controls."); *In re A.C.*, No. 04-12-00679-CV, 2013 WL 352449, at *2 (Tex. App.—San Antonio Jan. 30, 2013, pet. denied) (mem. op.).

The trial court's written order stated a different basis to terminate Dad's parental rights:[3]

> The Court finds by clear and convincing evidence that, after having waived service of process or being served with citation in this suit, [Dad] did not respond by timely filing an admission of paternity or by filing a counterclaim for paternity or for voluntary paternity to be adjudicated under chapter 160 of the Texas Family Code before the final hearing in this suit.

We note that "[t]he rights of an alleged father may be terminated if . . . (1) after being served with citation, he does not respond by timely filing an admission of paternity or a counterclaim for paternity under Chapter 160 . . . ." TEX. FAM. CODE ANN. § 161.002(b); *In re S.J.R.-Z.*, 537 S.W.3d at 682; *In re C.M.C.*, 273 S.W.3d 862, 878 (Tex. App.—Houston [14th Dist.] 2008, no pet.). *But see In re M.J.M.G.*, 543 S.W.3d 862, 864 (Tex. App.—San Antonio 2017, no pet.) (reiterating that a father who appears at trial before his rights are terminated, asserts his paternity, and asks that his parental rights not be terminated then requires the Department to

---

[3] "Following expiration of its plenary power, a trial court may only correct the entry of a final written judgment that incorrectly states the judgment actually rendered." *In re A.P.*, No. 07-10-00481-CV, 2011 WL 780525, at *2 (Tex. App.—Amarillo Mar. 7, 2011, no pet.) (mem. op.); *see also E.D. v. Tex. Dep't of Family & Protective Servs.*, No. 03-19-00766-CV, 2020 WL 278349, at *1 (Tex. App.—Austin Jan. 17, 2020, no pet.) (mem. op.) (same).

prove its case under section 161.001); *Toliver v. Tex. Dep't of Family & Protective Servs.*, 217 S.W.3d 85, 105 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (same).

## B.     Waiver

In his brief, Dad did not challenge the trial court's finding that he failed to establish paternity with respect to B.J.S.  *See* TEX. FAM. CODE ANN. § 161.002(b); *In re M.J.M.G.*, 543 S.W.3d at 865 (noting that termination of a father's parental rights under "section 161.002(b)(1) does not require proof that termination is in the best interest of the child").

To avoid termination of his parental rights to B.J.S., Dad had to "challenge all independent bases or grounds that fully support [the trial court's] order."  *See In re M.J.M.G.*, 543 S.W.3d at 864 (citing *Britton v. Tex. Dep't of Criminal Justice*, 95 S.W.3d 676, 681 (Tex. App.—Houston [1st Dist.] 2002, no pet.)).

Because Dad did not challenge the trial court's finding that he failed to file an admission of paternity, which is an independent ground to support the termination order, *see* TEX. FAM. CODE ANN. § 161.002(b)(1), we must accept the unchallenged finding as true, *see In re M.J.M.G.*, 543 S.W.3d at 864; *Britton*, 95 S.W.3d at 681.

## CONCLUSION

For the reasons given above, we affirm the trial court's order.

Patricia O. Alvarez, Justice

---

[i] Clear and Convincing Evidence. If the Department moves to terminate a parent's rights to a child, the Department must prove by clear and convincing evidence that the parent's acts or omissions met one or more of the grounds for involuntary termination listed in section 161.001(b)(1) of the Family Code and terminating the parent's rights is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b); *In re J.F.C.*, 96 S.W.3d 256, 261 (Tex. 2002). The same evidence used to prove the parent's acts or omissions under section 161.001(b)(1) may be used in determining the best interest of the child under section 161.001(b)(2). *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002); *In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.); *see also* TEX. FAM. CODE ANN. § 161.001(b). The trial court may consider a parent's past deliberate conduct to infer future conduct in a similar situation. *In re D.M.*, 452 S.W.3d at 472.

[ii] Statutory Grounds for Termination. The Family Code authorizes a court to terminate the parent-child relationship if, inter alia, it finds by clear and convincing evidence that the parent's acts or omissions met certain criteria. *See* TEX. FAM. CODE ANN. § 161.001(b). Here, the trial court found Dad's course of conduct met subsections (D), (E), and (O):

(D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;

(E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child; [and]

. . . .

(O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

*Id.* § 161.001(b)(1).

[iii] <u>Factual Sufficiency</u>. Under a clear and convincing standard, evidence is factually sufficient if "a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d at 25; *accord In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We must consider "whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *In re J.F.C.*, 96 S.W.3d at 266; *accord In re H.R.M.*, 209 S.W.3d at 108.

[iv] <u>Statutory Factors for Best Interest of the Child</u>. The Texas legislature codified certain factors courts are to use in determining the best interest of a child:

(1) the child's age and physical and mental vulnerabilities;

(2) the frequency and nature of out-of-home placements;

(3) the magnitude, frequency, and circumstances of the harm to the child;

(4) whether the child has been the victim of repeated harm after the initial report and intervention by the department;

(5) whether the child is fearful of living in or returning to the child's home;

(6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home;

(7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;

(8) whether there is a history of substance abuse by the child's family or others who have access to the child's home;

(9) whether the perpetrator of the harm to the child is identified;

(10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;

(11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;

(12) whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with:

(A) minimally adequate health and nutritional care;

(B) care, nurturance, and appropriate discipline consistent with the child's physical and psychological development;

(C) guidance and supervision consistent with the child's safety;

(D) a safe physical home environment;

(E) protection from repeated exposure to violence even though the violence may not be directed at the child; and

(F) an understanding of the child's needs and capabilities; and

(13) whether an adequate social support system consisting of an extended family and friends is available to the child.

TEX. FAM. CODE ANN. § 263.307(b); *see In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018) (recognizing statutory factors).

[v] *Holley* Factors. The Supreme Court of Texas identified the following factors to determine the best interest of a child in its landmark case *Holley v. Adams*:

(A) the desires of the child;

(B) the emotional and physical needs of the child now and in the future;

(C) the emotional and physical danger to the child now and in the future;

(D) the parental abilities of the individuals seeking custody;

(E) the programs available to assist these individuals to promote the best interest of the child;

(F) the plans for the child by these individuals or by the agency seeking custody;
(G) the stability of the home or proposed placement;
(H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and
(I) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (footnotes omitted); *accord In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (reciting the *Holley* factors).